JAY FRIEDHEIM #4516
ADMIRALTY ADVOCATES®
866 Iwilei Road, Suite 201
Honolulu, Hawai'i 96817
(808)545-5454 Phone
(808)528-1818 Fax
jay@admiraltyadvocates.com
*Proctor in Admiralty for Jenos Patrick*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| JENOS PATRICK,<br>              Plaintiff,<br>vs.<br><br>TRIDENT SEAFOODS CORPORATION, JOHN DOES 1-20; MARY DOES 1-20; DOE CORPORATIONS 1-20; DOE PARTNERSHIPS 1-20; DOE ASSOCIATES 1-20; DOE GOVERNMENTAL AGENCIES 1-20; and OTHER ENTITIES 1-20, *In Personam*;<br><br>    and<br><br>M/V SEATTLE ENTERPRISE, O.N. 904767, *In Rem*,<br>              Defendants. | Civil No. CV<br><br>(In Admiralty and Diversity of Citizenship)<br><br><br>PLAINTIFF JENOS PATRICK'S VERIFIED COMPLAINT IN ADMIRALTY; DEMAND FOR JURY; VERIFICATION; SUMMONS |

## PLAINTIFF JENOS PATRICK'S COMPLAINT

THIS ACTION IS BROUGHT UNDER 28 U.S.C. § 1916 ALLOWING SEAMAN TO SUE WITHOUT PREPAYMENT OF FEES. PLAINTIFF IS WITHOUT FUNDS AND QUALIFIES AS A SEAMAN.

This COMPLAINT is filed pursuant to the Federal Rules of Civil Procedure including the Supplemental Rules for Certain Admiralty and Maritime Claims and states the following:

## JURISDICTION

1) Plaintiff Jenos Patrick (hereinafter "Plaintiff") states that some of his claims are Admiralty and Maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and are causes of action otherwise justiciable in Admiralty. Plaintiff, pursuant to the principles of Admiralty, avers that the purpose of this document is to libel in admiralty the parties listed herein.

2) Plaintiff has the right to a jury trial under the Jones Act, 46 U.S.C. §30104 et seq. (2006), for all question of facts and the damages portion of the Jones Act and for determination of the maritime issues which are not otherwise entitled to a jury.

3) The jurisdiction of the federal courts arises under 28 U.S.C. §1331 (Federal Question).

4) The jurisdiction of the federal courts also arises under 28 U.S.C. §1333 (Admiralty).

5) The jurisdiction of the federal courts also arises under the Admiralty Extension Act, 46 U.S.C., §30101, which extends jurisdiction to cases of damage or injury on land.

6) This Court also has jurisdiction under Federal Statutes which require the prompt payment of wages such as 46 U.S.C. § 10313(f), and (g).

7) This Court has jurisdiction under 46 U.S.C. § 10504 entitling the plaintiff to the payment of penalties and costs for the failure to pay wages.

8) This Court also has jurisdiction under 46 U.S.C. § 31342 for failing to file a proper report to the United States Coast Guard on a CG-2692. Serious Marine Incident report, and under 46 U.S.C. § 3301, for vessels 100 gross tons or more, and under the general maritime law.

9) The jurisdiction of the federal courts also arises under 28 U.S.C.§1332 (Diversity of Citizenship), because the Plaintiff and the defendant Trident Seafoods Corporation are citizens of different States.

10) The jurisdiction of the federal courts also arises under the admiralty and general maritime common law of the United States of America and United States Supreme Court case law granting rights regarding procedures related to obtaining recoveries for Maritime Torts, Maintenance, Cure, Punitive Damages, and Attorney's Fees.

11) The jurisdiction of the federal courts also arises under pendent and ancillary jurisdiction under the laws of the State of Hawai'i and Territory and Kingdom of Hawai'i laws regarding the humane treatment of seaman and other matters related to this case.

12) The jurisdiction of the federal courts also arises under pendent and ancillary

jurisdiction under the laws of the Federated States of Micronesia (HEREINAFTER "F.S.M.") and laws regarding the humane treatment of it's citizens working and living in the USA pursuant to the U.S. Compact of Free Association which permits eligible citizens from certain Freely Associated States (FAS), including Micronesia, to migrate to the United States and its territories without visa and labor certification requirements.

13) The defendant Trident was also required to provide training and certification for various safety procedures and drills for situations like fires and man overboard situations. Trident also had to make sure that the individuals they were hiring had the basic skills and knowledge required to work safely on the vessels while they are under way.

14) When hiring seaman from a union, Trident could rely on the union's training and certification procedures. When Trident hires individuals such as the Plaintiff whom it knows does not hold a Z-card or are not members of a seaman's union, Trident must act prudently and with due care to make sure that these workers possess the basic skills necessary to work safely on the vessel so that they do not injure themselves or their co-workers.

15) Venue is proper in the District of Hawai'i because many of the events subject to this complaint occurred in the District of Hawai'i, and at all relevant times the parties were located in and were doing business in the District of Hawai'i, and the Plaintiff is located in the District of Hawai'i at

4

this time and was residing in Hawaiʻi when he was hired by the defendant Trident Seafoods Corporation.

## PARTIES

16) Plaintiff Jenos Patrick (hereinafter "Plaintiff") is and was, at all times relevant herein, a resident of the State of Hawaiʻi including at the time of his being hired by the Defendant Trident and at the time of the filing this Complaint, which is verified.

17) Plaintiff was residing on Lukunor Atoll, which is part of the Mortlock Island group in the State of Chuuk (Truk), and which is part of the Federated States of Micronesia (F.S.M.).

18) Plaintiff moved to Honolulu more then ten years ago and has continuously maintained his residency in Hawaiʻi since then. The first time he left Hawaiʻi was on June 21, 2022 when he was flown to Seattle/Tacoma in the State Washington on a ticket provided to him by his new employer Trident Seafoods Corporation.

19) Defendant Trident Seafood Corporation (hereinafter "TRIDENT") was and is a Washington State company registered with the State of Washington and is engaged in interstate commerce in the seafood processing business all around the world including doing business in the State of Hawaiʻi.

20) Defendant M/V Seattle Enterprise O.N. 904767 (hereinafter the "M/V ENTERPRISE"), her engines, tackle, stores, freight, and equipment, was a

commercial fishing vessel duly registered and/or documented by and with the U. S. Coast Guard vessel documentation system. The vessel is not currently within the District of Hawaii.

21) Defendants John Does 1 -20, Jane Does 1-20, Doe Partnerships 1-20, Doe Corporations 1-20, Doe Associates 1-20, Doe Governmental Agencies 1-20, and Other Doe Entities 1-20 (hereinafter "Does") are sued herein under fictitious names for the reason that their true names and identities are presently unknown to Plaintiff except that they are connected in some manner with the named Defendants and/or were their agents, servants, customers, clients, employees, employers, representatives, co-venturer, associates, vendors, suppliers, manufacturers, sub-contractors or contractors and/or owners, lessees, assignees, licensee, designers, and architects of the named Defendants and/or were in some manner presently unknown to the Plaintiff engaged in the activities alleged herein and/or were in some manner responsible for the injuries or damages to Plaintiff and/or manufactured and/or designed and/or placed on the market a product which was defective, which defect was a proximate cause of injuries or damages to Plaintiff and/or inspected and/or maintained and/or controlled some object or product or premises in a negligent manner, which negligence was proximate cause of injuries or damages to Plaintiff and/or conducted some activity in negligent or dangerous manner, which negligent or dangerous

conduct was a proximate cause of injuries or damages to Plaintiff and/or were in some manner related to the named Defendants and that their "true names, identities, capacities, activities and/or responsibilities" are presently unknown to Plaintiff or his attorney.

## FACTUAL ALLEGATIONS

22) During or about November of 2022, Plaintiff was injured on several occasions while he was either in the service of the vessel or performing work on the M/V ENTERPRISE.

23) The first injury occurred while he was in the bathroom on the second floor of the vessel. He was walking in there to perform work cleaning the bathroom. When he went in he did not know that it was wet inside and when he stepped over the door entry he slipped fell to the floor and injured his right knee and back. He did not initially report his injury. Then a few days later it was swelling and hurting he reported the accident and his injury the ship's medic. The Ship's Medic gave him an injection in his buttock of pain medication and provided him with additional pain medication pills.

24) The second injury occurred when he was coming down from the upper bunk which was assigned to him and where he was sleeping. He was stepping on to a bucket to help him get down because his co-worker covered the step with the curtain so it was not available for Plaintiff to use to descend from the upper bunk. He injured his right wrist and his forehead was bleeding and

his neck was hurt and as well his stomach area and his lower back. After he fell he went and found the Ship's Medic at his cabin and reported his accident. He was provided with additional medicine.

25) There was a third injury that occurred while going down the stairs to go to the galley. As he was going down the stairs he was having a hard time carrying a plate of food for a ship's officer and he could not use the only rail which was on the right side because of his injured right wrist. He inured his elbows and wrists in this incident. His boss, the main cook, was with him when he fell.

26) A few hours later he went to the Ship's Medic and he treated his bleeding elbows and other injuries. He told the Ship's Medic that he was in a lot of pain and he was sent to his room to rest for the remainder of his shift. He was told he had to work the next day. He had a lot of trouble operating the dishwasher and taking the garbage out.

27) He could no longer climb up to the top bunk. The Ship's Medic told him he would be sent to the doctor for his wrist when the vessel got to Oregon. When the vessel got to Oregon he went to the hospital. The doctor treated his wrist and his knees. The doctor sent him to another doctor for his knees. They took x-ray of his wrists and knees when the vessel got to Tacoma.

28) The company paid for the hotel when he was in Seattle waiting for further medical procedures. While he was in the hotel returning from a medical

appointment he bought a coffee and a sandwich and was going to a table to sit. The chair that he sat on had a bent leg and he fell down on his back and further hurt his wrist and his back.   Plaintiff reported the injury to the hotel and he told Jesse at human resources about this injury.

29)   A few days after that he had surgery to his right wrist.  He continued to stay at the same hotel until he was repatriated to Honolulu. TRIDENT paid for his food and lodging. The company would send him a link for Uber to take him to his medical appointments.

30)   TRIDENT hired and/or employed  Plaintiff to perform various work as a seaman on the M/V SEATTLE ENTERPRISE (HEREINAFTER "M/V ENTERPRISE").

31)   M/V ENTERPRISE is an American vessel registered with the U S. Coast Guard as O.N. 904767. She is a 250 foot commercial fishing vessel built in 1973 which is engaged in fishing and fish processing in the waters between Seattle and Alaska.

32)   Plaintiff was hired through a Micronesian person, Taniel Tittus (HEREINAFTER "Taniel")  who works for Trident as a seaman on a different vessel that does food processing and fishing.

33)   Upon information and belief, Taniel gets paid a commission by TRIDENT for finding and helping Micronesian workers get hired by TRIDENT.

34)   Taniel was given a picture of  Plaintiff's passport and social security card

9

and his vaccination card and other personal private information. Taniel turned this information over to TRIDENT along with Plaintiff's email.

35) Taniel told Plaintiff that he should try to get the job of a fish processor on the vessel that he was working on because they get paid hourly and on the ENTERPRISE they get paid by "case rate".

36) When the people hiring him found out that he had been working in a restaurant in Waikiki they assigned him to the galley.

37) The result of this job assignment was that Plaintiff did not get paid for the work that he had to do everyday preparing food for the crew that was riding on the vessel from the port in Washington state until the vessel got to the fishing grounds. The rest of the crew was not required to work on the vessel during the approximate 6 or 7 days as the vessel traveled to the fishing grounds.

38) The work Plaintiff performed on the M/V ENTERPRISE occurred over a period of three months, which is the subject of a contract of which Plaintiff does not have a copy.

39) Plaintiff is owed wages and hours and other employment related benefits that are mandated by state and federal law and maritime laws and union obligations.

40) Upon his return, Plaintiff found it necessary to live with others in an apartment that costs $1,200 per month. Plaintiff's share is $600 per month.

Various utility bills and other charges are additional costs he has to pay to live at this basic level. He is not able to cook food at this apartment. Therefore, he has to eat out each day. He often has to eat at fast food places where he has to pay for the food when he buys it.

41) He spends about $40.00 a day on food for himself. He has been paying $179.74 per month for insurance for his car. His phone bill is $238.21 per month. He pays about $ 60.00 per week for gasoline.

42) He also has to pay $115.00 per month for storage until he can get better and get his own place again for his fiancé, Selynda, and their 6 year old daughter Jayreen.

43) Trident has been making direct deposits into his bank account. The last deposit was for $650.00. Plaintiff is not sure of the total amount or frequency of these payments.

## COUNT I - JONES ACT NEGLIGENCE

44) The Plaintiff incorporates by reference paragraphs 1 - 43 of this pleading.

45) The Plaintiff was employed by TRIDENT to serve as a seaman and a member of the crew of the M/V ENTERPRISE.

46) Plaintiff's employer TRIDENT owed him the duty to use reasonable care to provide him with a safe place in which to work and to avoid causing the Plaintiff injury, including the duty to provide Plaintiff with proper training

11

and guidance and with a safe place in which to perform the work he was hired to do on the vessel.

47) Plaintiff's employer had a duty to maintain the ship and its decks, and surfaces upon which to work. TRIDENT had the duty to provide a properly trained crew and equipment in such condition that the Plaintiff could carry out his seaman's duties and activities onboard the vessel with reasonable safety.

48) The Plaintiff's employer TRIDENT breached that duty, and as a result, the personal injuries suffered by Plaintiff were the direct and proximate result of the negligent omissions and commissions by the Plaintiff's employer in the management, care and operation of the vessel and in the training of the crew, thereby rendering the Plaintiff's employer liable for the Plaintiff's damages broadly outlined in this pleading.

## COUNT II - UNSEAWORTH1NESS

49) The plaintiff incorporates by reference paragraphs 1-48 of this pleading.

50) The defendant who owned the vessel and those that controlled and operated the vessel, and the vessel itself, In Rem, had a non-delegable duty to provide the Plaintiff with a seaworthy vessel, crew, training, appurtenances and equipment including maintenance and cure payments when needed.

51) The defendant breached their duty, and as a result of their breach of that

duty, the injuries suffered by the Plaintiff were directly and proximately caused by the unseaworthiness of the vessel, thereby rendering the defendant(s) liable for the Plaintiffs damages broadly outlined in this pleading.

## COUNT III - TRADITIONAL MARITIME REMEDIES: MAINTENANCE AND CURE

52) The Plaintiff incorporates by reference paragraphs 1-51 of this pleading.

53) Plaintiff is a seaman who was injured while in service of the vessel and within the course and scope of his employment.

54) Plaintiff is entitled to receive Maintenance until he reaches maximum medical cure.

55) Plaintiff is entitled to maintenance and cure from his employer TRIDENT and the Vessel owner, once it is determined who the vessel owner is, and from the M/V ENTERPRISE herself "*in rem*."

56) Plaintiff may seek to arrest the vessel at some time during these proceedings. Plaintiff is willing to accept a letter of undertaking in lieu of arresting the vessel to secure proceeds to pay for the defendants' obligations. The vessel is not currently within the Jjurisdiction of the District of Hawaii.

## COUNT IV - NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

57) Plaintiff incorporates by reference paragraphs 1 - 56 of this pleading.

58) Defendant TRIDENT owed the Plaintiff a duty to avoid causing him undue emotional distress. As a proximate result of TRIDENT's negligent and/or intentional actions and omissions, TRIDENT has inflicted severe mental and physical distress, anxiety, fear, embarrassment, shock, and indignity on Plaintiff, both before and after his series of injuries on the vessel.

59) As a direct and proximate result of the defendant TRIDENT's breach of this duty, the Plaintiff suffered damages in an amount which will be shown at trial.

## COUNT V - AN ACCOUNTING

60) Plaintiff demands a full and complete accounting of all funds that generated from the voyage the he was supposed to get a share of.

## COUNT VI - PUNITIVE DAMAGES

61) Plaintiff incorporates by reference paragraphs 1- 60 of this pleading.

62) Plaintiff is entitled to Punitive Damages for actions including, but not limited to, when the Defendant, who knew of the injuries which the Plaintiff had received, and the medical care which the Plaintiff needed and received on the vessel after he was injured, required Plaintiff to continue working, which which resulted in further injury, and knowingly, willfully and callously denied the Plaintiff his medical and compensation benefits and for his treatment on the vessel, requiring him to employ an attorney to receive

14

these benefits.

63) Defendant TRIDENT has acted with malice, in a gross, willful and wonton manner, regarding the denial of the medical care and attention while Plaintiff was on the vessel and compensation benefits in the form of maintenance and cure and other matters outlined in this pleading entitling the Plaintiff to an award of punitive damages.

64) Plaintiff is entitled to the repayment of his attorneys fees in addition to the other damages he is seeking in this case.

## COUNT VII - VIOLATION OF WAGE AND HOUR PENALTY STATUTES

65) Plaintiff incorporates by reference paragraphs 1-64 of thisi pleading.

66) Trident is subject to statutory penalties for failure to pay wages when the wages are due. Trident failed to pay Plaintiff's wages that have been due and owing for the work Plaintiff was required to do while the vessel was underway to the fishing grounds,

## COUNT VIII - DAMAGES

67) The accident caused the Plaintiff severe personal injuries requiring ongoing medical treatment, loss of time from work, and may have left him permanently partially disabled.

68) As a result of the accidents and violations described above, the Plaintiff suffered physical and emotional injuries, and damages, both past and future,

including pain, suffering, anguish, humiliation, severe emotional distress, loss of earnings and loss of earning capacity, loss of ability to enjoy life, disability, disfigurement, hedonic damages, pecuniary and non-pecuniary damages, past and future medical costs, court costs, and other expenses.

69) Plaintiff values his claim in excess of $200,000.

WHEREFORE, the plaintiff prays:

That judgment he entered against the defendant and to the extent possible for each cause of action, jointly and severally against the vessel for:

    1 . General damages, special damages, and attorney's fees in amounts to be shown at trial;

    2. The cost of suit herein;

    3. Punitive damages against the defendants;

    5. Prejudgment and post judgment interest, and such other relief as is just and equitable in the premises.

DATED:    Honolulu, Hawai'i, January 4, 2023.

                                                  Jay Law. Friedheim AAL for
                                                  Plaintiff Jenos Patrick

Plaintiff hereby demands a jury trial on all issues so triable herein.

DATED :    Honolulu, Hawai'i, January 4, 2023

                                                  Jay Law. Friedheim AAL for
                                                  Plaintiff Jenos Patrick